The Supreme Court reversed the decree of the Court at Nisi Prius on May 4, 1864 in the following opinion per:
Strong, J.
The substantial question in this case is, whether the defendants may rightfully demand from the complainant higher rates for transporting over their railroad, coal oil consigned to him at Philadelphia, and received by them for carriage at Pittsburg, than they demand of shippers generally from the same place of loading to the same place of delivery, merely because the complainant intends to send the oil afterwards to New York. Does the place of final destination, if beyond the terminus of the ■defendant’s road, justify an increase of the charge made for transporting over the road itself, freight thus destined, over the rate established for similar .freight destined for the terminus itself? It is to be observed that the railroad of the defendants is wholly within this State; that it doe's not extend beyond *452 -Philadelphia eastward, nor westward beyond Pittsburg. It is also to be noted that the oil delivered to the defendants at Pittsburg for carriage, and upon which the charges complained of are made, is a domestic product of - the State, and as such is-entitled to the spirit of the protection .(if not to its letter), .extended by the commutation tonnage tax act of 1861 to domestic products. If transported from Pittsburg to any eastern market it must pass over the road of the defendants. It has no other-available route.
The general duty of railroad companies to make no discrimination between parties offering goods to them for transportation is admitted, as indeed it must be. Different kinds of freight may be subjected to different charges, but generally advantages-cannot be given to one shipper, or class of shippers, greater than those which are allowed to all others. "When such companies, furnish cars and motive power, and when they become common carriers, they are under obligations to receive all goods offered to them for carriage, to transport them in the order of their receipt, and at rates of compensation that are alike to all. "When the service is the same, the compensation demanded must be the same also. And the rule is not the less 'general or imperative because there are some seeming qualifications to it. It may be that it is competent fSV a railroad company to enter into-special agreements whereby advantages may be secured to individuals in the carriage of goods upon their railway, if it is manifest that in entering into such agreements, they have only the-interests o'f the company in view, and when they are willing to-afford the same facilities to all others on the same terms. Thus it has been held that railway companies may agree to carry at less than the ordinary charges, in consideration of a guarantee of' large quantities and full train loads at regular periods, provided the real object be to obtain thereby a greater remunerative profit by the diminished cost of carriage, although the effect may be to-exclude from the lower rate those persons who cannot give such a guarantee; Nicholson vs. The Great Western Railroad Company, 94 Eng. Com. Law Reps. 366; In re Oxdale, 1 Com. Bench N. S. 410; Ransom’s Case, 1 C. B. 437. But these qualifications of the general rule, if they may be called qualifications, have *453 nothing to do with the present case. They rest upon a different principle.- They'are allowable only when the exceptional regulation has reference primarily to the interests of the company, rather than to the advantage of a particular shipper or class of .shippers, and allowable only when they relate to transportation over the company’s own railroad. In Baxendale vs. The Great Western Railway Company, 94 Eng. Com. Law Reps. 336; Chief Justice Cockburn noticed this distinction as follows: “It .may be convenient to avert to a distinction not always kept sight of in argument, between cases in which the interest of the company sought to be promoted by the regulation or act complained of, is one with reference, to the .railway itself as to which the •questions, occurs, and thos'e in which the benefit sought to be 'obtained by the company, is one which has reference to interests ■distinct from the particular railway ; as where for example the -company .are proprietors of another railway, or -carry on other business. In the latter class of cases, it appears to us clear that ¡the company must be taken to be quoad the particular railway, in the position of the third parties, and that they cannot with a .view to such separate interest, give au undue preference, or impose an unreasonable disadvantage, any more than they could do so to promote*the interest of any other party.” These observations are founded in sound reason, and they commend themselves to us as indicating a rule of substantial justice. They fit ■the case now in hand, and solve it without difficulty.
The defendants are authorized by their charter to be common .carriers on their railroad from Pittsburg to Philadelphia, with ■power to establish, demand and receive such rates of toll or other •compensation for the transportation of merchandise and commodi7 ties as to the president and directors shall seem reasonable. It is .admitted that in the exercise of these powers -they must- treat all, .customers alike. Now it- is clear, that if they receive coal oil at Pittsburg to be carried to Philadelphia, it can make no difference do them either in the risk or cost of transportation whether Philadelphia is the point of .ultimate destination of- the oil, or whether the consignee intends that it shall aftewards be started .anew on another line and forwarded from Philadelphia to New "York. The point of final destination of the freight is a matter *454 in which they have no interest as carriers over their own road. If it be admitted they may contract to carry freight to points beyond Philadelphia or Pittsburg, over connecting lines, it is-still true that as to all carriage beyond the termini of their own road they stand in the position of third parties, and they can no-more secure to themselves an advantage over other carriers on the connecting lines, by discriminating in tolls on'their own than they could secure similar advantages to one shipper over another in the same way. Yet this is the practical effect of the regulation which the defendants are seeking to enforce against the-complainant, and we cannot doubt that such is their object in making it. They in reality say to him “employ us to carry your oil, not only over our road to Philadelphia, but thence to New York.- If you do not, we will exact from you for its carriage to-Philadelphia, six cents per hundred pounds more than we demand from all others who employ us to transport similar-freight only to Philadelphia. Or if you will employ us to carry it to New York after it shall have reached Philadelphia, we will carry it to Philadelphia for six cents less per hundred pounds than we are accustomed to charge others for similar transportation. No one will maintain that they can lawfully make such a stipulation for the benefit of a third party, e. g. one or two other-carriers. They cannot say to a shipper at Pittsburg, of any domestic product, “You have freight destined to New York. You must send it over our road to Philadelphia. If, when it. arrives there, you will forward it by A, to New York, we will carry it over our line at certain rates. If you send it by any other than A, our charges will be higher.” This is a discrimination that cannot be allowed. Conceding it would put in the-power of the defendants a monopoly of the carriage of all articles-which pass over their road from either terminus to every place of final delivery. The oppressive effects of such a rule are the same, whether its motive be to benefit third parties or the railroad companies itself. Of transportation along the line of their-road, the defendants practically have a monopoly. It is not consistent with the public interests, or with common right that they should be permitted so to use it as to secure to themselves-superior and exclusive advantage on other lines of transportation bey.ond the ends of their road. If they contract to carry freight *455 to distant points in other States and Counties, they should stand on the same footing with other carriers, over other roads and lines than their own. If they may use their exclusive power over their road, so as to force into their owm hands an external carrying trade, and do this at the expense of a-shipper or elassnf shippers, it is quite possible for them to exclude our domestic products from all foreign markets. Shippers of such products might be compelled to seek a final market in Philadelphia under penalty of such increased rates of toll beyond, as to make it impossible for them to find any other place of sale.- These consequences, more or less aggravated, according to the will of the defendants, and according to interests they may have distinct from those which belong to them as owners of their road, flow naturally from treating the destination or use to be made of freight after it has left the road to effect the price of carriage over it. In Baxendale vs. The Great Western Railroad Company, already cited, it was held that the company could not secure to themselves a monopoly of the delivery of goods beyond the termination of their road by a general regulation charging a gross price for carriage on the road, including the cost of such delivery to all persons, whether they receive their goods at the stations or beyond. In other words they were not allowed to make use of their rights over their road to secure to themselves advantages beyond it. That there are special provisions in the English charters against granting special privileges to individuals or classes of men, makes no difference, for they are but declaratory of the common law ; Sanford vs. The Catawissa Railroad Company, 12 Harris 378.
We hold then that the rule of the defendants of which the complainant complains, is unreasonable, and such as they have no legal right to enforce. The apology set up for it is not sufficient. That the imposition or higher rates for carrying the complainant’s oil to Philadelphia, because it is afterwards to be forwarded in some'way to New York is necessary to prevent his having an advantage in the New York market over those who employ the defendants to transport all the way, or -over those who send oil from Pittsburg to New York with through bills of lading, is a matter outside of their control. It has. no proper relation to them as carriers.'
*456 An injunction will therefore be issued according to the prayer of the bill, and an account will be decreed of the excess over the usual or ordinary rates of freight heretofore paid bj^ the complainant to the defendants, and the amount found by such account to have been paid in excess of the ordinary rates of charge for transportation from Pittsburg to Philadelphia, will be decreed to be paid to the complainant, together with interest and the costs. The account is not to include anything more than such excess charges and interest. Let a decree be prepared accordingly.